IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Dana Incorporated, | Case No. 3:21 CV 758 |
| Plaintiff, | ORDER GRANTING <u>MOTION TO DISMISS</u> |
| -vs- | JUDGE JACK ZOUHARY |
| Zurich American Insurance Company, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Dana Incorporated ("Dana") is suing Defendant Zurich American Insurance Company ("Zurich") for refusing to provide coverage under an insurance Policy (Doc. 6 at 21–22).  Dana argues the presence of COVID-19 on physical surfaces in its workplaces physically damaged its property and this alleged damage, combined with the government closure orders that forced Dana to suspend business operations, amounts to a covered loss under the Policy (*id.* at 4–8).  Zurich moves for dismissal (Doc. 27) under Federal Civil Rule 12(b)(6).  Dana opposes (Doc. 28).  This Court instructed both parties to focus their briefs on two Policy exclusions -- the Microorganism Exclusion and the Contamination Exclusion (Doc. 25).  Either Exclusion, if applicable, would be sufficient to grant the Motion.

### LEGAL STANDARD

A complaint is subject to dismissal under Rule 12(b)(6) if it fails to state a claim on which relief may be granted.  To survive a Rule 12(b)(6) dismissal, the "complaint must present 'enough

facts to state a claim to relief that is plausible on its face'" when its well-pleaded factual allegations are presumed true and all reasonable inferences are drawn in the non-moving party's favor. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

## DISCUSSION

### Property Damage and Time Element Coverages

The Policy provides coverage for both direct physical damage to the property ("property damage" coverage) and coverage for business interruption expenses ("time-element" coverage) (Doc. 6 at 8–9). Dana's claim falls under the Policy's time-element provision.

Dana first argues that both the Microorganism and Contamination Exclusions are limited to property damage claims, and not time-element coverage (Doc. 28 at 14–16). Dana argues that because the Policy lists different exclusions under the respective sections for property damage and time-element claims, each exclusion must necessarily be limited to the types of claims listed directly above it (*id.* at 12–13). Dana attempts to bolster this argument by pointing to purportedly duplicative language which would render the entire time-element coverage ineffective (*id.* at 13).

This Court is not persuaded. Dana's argument about the structure of the Policy fails to consider the actual text of the Policy, and arguments about apparent inconsistencies and duplicities between various exclusion provisions mischaracterize the cited text and fail to consider other language that directly speaks to the issue of how the exclusions are to be applied. This Court's analysis of the claim for dismissal must begin and end with the Policy's plain language. *O'Donnell v. Fin. Am. Life Ins. Co.*, 328 F.R.D. 174, 184 (S.D. Ohio 2017). To that end, under the "Exclusions" listed in the property damage section, the Policy states that "[i]n addition to the exclusions elsewhere

in this Policy, the following exclusions apply unless otherwise stated" (Doc. 28-1 at 27, 31). The Contamination Exclusion is listed under this heading.

Relatedly, the "Time Element Exclusions" also state that "[i]n addition to exclusions elsewhere in this Policy, the following exclusions apply to TIME ELEMENT loss" (Doc. 28-1 at 60). The plain language paints a clear picture -- the "Exclusions" listed under the property damage coverage apply to the entire Policy unless explicitly stated otherwise, and the "Time Element Exclusions" are additional exclusions that apply only to time-element coverage in addition to the overall Exclusions. The fact that the exclusions under property damage are titled simply "Exclusions" and not "Property Damage Exclusions," as opposed to the more specifically titled and worded "Time Element Exclusions," is further evidence of the general applicability of the former set of exclusions, as compared to the latter's narrower focus. There is no language in the Policy specifically indicating that the Contamination Exclusion or the Microorganism Exclusion is inapplicable to time-element coverage. Therefore, they do apply to time-element when the conditions of either exclusion are satisfied.

While this Court must construe ambiguities against the drafter for purposes of this Motion to Dismiss, "[i]t is axiomatic that this rule [of strict construction against the insurer] cannot be employed to create ambiguity where there is none." *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 679 (6th Cir. 2011) (applying Ohio law and quoting *Hacker v. Dickman*, 661 N.E.2d 1005, 1006 (Ohio 1996)). Dana fails to show that the property-damage and time-element sections are somehow distinct and function independently from one another. Therefore, either the Contamination Exclusion or the Microorganism Exclusion (or both) could bar Dana's claim so long as the facts of the claim line up with either exclusion. We now turn to the particulars of each.

**Contamination Exclusion**

Dana argues that even if the Contamination Exclusion applies to the entire Policy, it does not bar coverage in this specific case (Doc. 28 at 16). Dana's chief argument here is that it is seeking time-element "losses" due to the contamination, and that the exclusions only bar "costs" related to contamination, not "losses" (Doc. 28 at 17). But this argument fundamentally misstates how the Contamination Exclusion functions. The Contamination Exclusion states as follows (Doc. 28-1 at 31):

> This Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy:
>
> 1) contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured.

"Contamination" is specifically defined by the Policy as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, *pathogen or pathogenic organism*, bacteria, *virus, disease causing or illness causing agent*, fungus, mold, or mildew" (Doc. 28-1 at 80) (emphasis added).

Dana argues a split of authority as to whether exclusions like this apply to claims seeking income loss and expense rather than remediating property damage costs (Doc. 28 at 19). There is no such split in authority. In *Cinemark Holdings, Inc. v. Factory Mutual Insurance*, defendant argued that its similarly worded contamination exclusion barred coverage, but the court never reached that issue. 500 F. Supp. 3d 565, 569 (E.D. Tex. 2021). Rather, the court noted the policy was very broad and other provisions expressly covered communicable diseases, enough to survive a motion to dismiss. *Id.* That is the opposite of what is happening here -- there is no explicit communicable-disease coverage in the Policy. Similarly, *Procaccianti Companies v. Zurich*

4

*American Insurance*, No. 1:20-cv-00512-WES-PAS (D.R.I. 2021), does not reach the exclusion issue, despite it being mentioned in the pleadings (Doc. 28-4). That order is five sentences long and does not explain the substantive reasons that the motion to dismiss failed (Doc. 28-3). A third case, *Thor Equities, LLC v. Factory Mutual Insurance*, 2021 WL 1226983, at *4 (S.D.N.Y. 2021), does hold that the proffered difference between "cost" and "loss" as applied to a similarly worded exclusion was enough to defeat a motion to dismiss, but this decision does not touch the issue of whether there was a covered incident of damage or loss in the first place from which additional coverages could flow. The difference, if any, between "cost" and "loss" is immaterial if Dana cannot show there was a covered incident of damage or loss.

Dana's argument ignores that an infectious virus is simply not an insured form of damage under the Policy as stated in the Contamination Exclusion. "This Policy excludes [coverage for contamination] unless ***directly resulting*** *from* ***other*** *physical damage not excluded by this Policy*" (Doc. 28-1 at 31). In other words, the only way Dana could recover damages caused by contamination (like a virus) is if the contamination was a direct result of a different form of damage that is covered by the Policy.

Dana has not alleged any form of physical damage or loss that would trigger coverage under the terms of the Policy. Dana argues that some combination of the virus itself altering its physical property and the government orders mandating temporary suspensions and closures of business amounts to a viable claim (Doc. 28 at 8). But, by the very text of the Contamination Exclusion, the presence of a virus cannot be a "physical loss or damage" (Doc. 28-1 at 67) incident that triggers coverage on a time-element claim. Even if the virus physically alters property in a way that would otherwise be damage or loss for purposes of triggering coverage (and that is a very big "if"), the exclusion explicitly states that this is not an incident triggering coverage.

5

Dana's next argument about losses stemming from government closure orders being a covered form of damage or loss is no more persuasive than the last. The Sixth Circuit recently ruled in a similar case that "[plaintiff's] argument that it suffered losses as a result of the Closure Orders and not the COVID-19 virus is unpersuasive." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 508 F. Supp. 3d 186, 205 (N.D. Ohio 2020), *aff'd*, 15 F. 4th 398 (6th Cir. 2021). In affirming, the Sixth Circuit held,

> [The government order] did not cause a direct, physical loss of property, which is a precondition for the business suspension coverage in the policy and in fact for most coverage in the policy. If we accepted the restaurant's invitation and construed any loss of *use* to be a physical loss of property, that would create problems of its own. 15 F.4th at 398.

The above holding is dispositive on the issue of whether government closure orders are an instance of physical loss that triggers coverage. They simply are not.

Dana's pleadings run directly into the plain text of the Contamination Exclusion; the virus itself categorically cannot be primary-coverage physical damage or loss, and Dana has alleged no other coverage-triggering physical damage or loss from which the "contamination" condition could directly flow.

**Microorganism Exclusion**

While the Contamination Exclusion completely bars Dana's claim and is dispositive of this case, it is worth briefly discussing the Microorganism Exclusion. It reads in relevant part, "[t]his policy does not insure against any loss, damage . . . arising out of or relating to: mold, mildew, fungus, spores or other microorganism . . . including but not limited to any substance whose presence poses an actual or potential threat to human health" (Doc. 28-1 at 32).

Dana argues that the Microorganism Exclusion does not apply to its virus-related claims because a virus is not a microorganism. Dana cites authority noting that words used in insurance policies may be defined by their normal meaning (Doc. 28 at 25–26). As a subset of "organism"

6

(necessarily a living being), a "microorganism" must be alive, and because a "virus" is not regarded to be alive under the dictionary definition, it therefore cannot be a "microorganism" (*id.*). Zurich counters that Dana has admitted the virus is alive by describing it as "viable," which means "living" (Doc. 29 at 6). But that is not the only definition of viable -- another is "capable of growing or developing."[1] Surely everyone would agree that, regardless of whether a virus is considered a living organism, viruses grow and develop as they infect cells and mutate. It is unclear whether Dana is conceding a virus is alive by an errant use of the word "viable," particularly when it more specifically alleges a virus is not alive.

Zurich also argues the extrinsic definitions are irrelevant because the term is defined in the exclusion itself, and this should be the controlling meaning of the word (Doc. 27-1 at 22). It asserts that the clause "including but not limited to any substance whose presence poses an actual or potential threat to human health" defines the term "microorganism" to include anything harmful to human health for purposes of the Policy (Doc. 27-1 at 22). Dana rebuts this, arguing the term "including" provides examples of substances already under the common definition of "microorganism" rather than expanding the definition past those limitations (Doc. 30 at 6).

At best, these conflicting definitions of "microorganism" and discordant interpretations of the Microorganism Exclusion establish that Zurich's interpretation of the exclusion is not the only plausible one. Further inquiry into the issue is not necessary at this pleading stage given the holding under the Contamination Exclusion.

---

[1] MERRIAM-WEBSTER.COM, https://www.meriam-webster.com/dictionary/viable (last visited Oct. 29, 2021).

## CONCLUSION

The Policy's plain language makes clear that both the Contamination Exclusion and the Microorganism Exclusion apply to the entire Policy. As explained above, the Contamination Exclusion is a complete bar to coverage. Zurich's Motion (Doc. 27) is granted on this ground. This case is dismissed.

IT IS SO ORDERED.

                                                                                           s/ *Jack Zouhary*
                                                                                         JACK ZOUHARY
                                                                                         U. S. DISTRICT JUDGE

November 2, 2021